IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 1:13-cr-451 |
| v. | Hon. Anthony J. Trenga |
| SHER JAGHORI, | Sentencing: April 18, 2014 |
| Defendant | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Dana J. Boente, Acting United States Attorney, Alexander T.H. Nguyen, Assistant United States Attorney, and Alicia J. Yass, Special Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, files this Position of the United States with Respect to Sentencing in the instant case.  The United States asks the Court to impose a sentence within the properly calculated Sentencing Guidelines range, of 210-240 months imprisonment, followed by a lifetime of supervised release.  Such a sentence appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

For over a year and a half, and at least seven times, the defendant traveled to Philadelphia. On the surface, it was to stay and catch up with relatives. In reality, it was to leverage their trust so that he could be left alone with Minor A. Minor A was the family's youngest daughter and – at 11 years old – almost four times younger than the defendant. Once alone together, the defendant told Minor A to

undress and to show her breasts. And he told her – a girl who, because of her Islamic faith, must conceal even her hair in public – to open her legs and bare her genitalia for him, all so that he could snap close-up photographs for his own sexual gratification. To overcome Minor A's concerns, the defendant told her he had taken similar photos of other girls. During the sessions, he reached out and touched her breast; afterwards, he took the photos back home to the Eastern District of Virginia, saved them on his computer and other media devices to be savored later, and planned his next trip to Philadelphia. *See* Ex. A.

Unlike victims the Court routinely sees in identity theft, bank robberies, or fraud cases, victims in child pornography investigations do not have a face. They do not want to testify or confront the defendant, especially when – as here – he is a family member. Ex. B (recorded victim interview). They do not have a voice. They do not stand up for themselves even when asked; they do not address the Court at sentencing; they often do not write victim impact statements. They do not even have a name. Indictments refer to them by initials or "Minor A." The Court often does not see or hear child pornography victims, not because they are indifferent to the violence that has been inflicted upon them (and, to be clear, child pornography offenses are crimes of violence, *see, e.g.,* 18 U.S.C. § 3156(a)(4)(C)). It is because they do not want to relive their private humiliation in public court.

This practical consideration – that the exploitation of Minor A could possibly be prosecuted only by forcing Minor A to relive it in open court – led the government

ultimately to resolve to lesser charges a case that was at its very core a production of child pornography case. 18 U.S.C. § 2251(a). The government has attached some of the most pertinent images and the victim interview to this Sentencing Memorandum, in the hopes that the Court will appreciate the serious nature of the child pornography offense committed here, and the impact it has on the victim. Child pornography cases – the way they come to the criminal justice system – are too often just abstract fact patterns printed in black and white on paper only.  *See* Ex. A, B.  They often do not communicate as clearly as they should the powerful impact on its unrepresented, reluctant, and often inarticulate victims. In some cultures it is believed that taking a photograph with a camera steals a person's soul; in a sense, child pornography production does the same to child victims.

     The government agrees with the Presentence Investigation Report's determination that the Total Offense Level is 37, that the defendant falls within Criminal History Category I, and that the resulting advisory Guidelines Range is accordingly 210 to 240 months.[1] Accordingly, the government requests that the Court sentence the defendant within the statutorily applicable range to include a mandatory minimum sentence of 5 years. In addition, the government requests that the Court sentence the defendant to a lifetime term of supervised release.

---

[1] This includes an appropriate one-level additional reduction under § 3E1.1(b) for timely notifying the government of his intention to enter a guilty plea, which the Government moves for at this time.

## **The Offense of Conviction**

Minor A grew up in a culture which requires women to dress simply, modestly, and with dignity – in public, she must cover her hair and her body in loose and unrevealing clothing. Islam forbids any sex appeal and physical allurement outside marriage.[2] Minor A, who was an 11-year-old student at the time of offense, born in Afghanistan, who covers her hair whenever leaving her house, had never had explicit images of her taken before. PSR ¶ 18.

But the photos and the video the defendant took are explicit. In one photo, the victim is sitting on a flat surface, using her hands to spread her vagina for the camera; the photo is a close-up of her vagina and anus (March 2, 2011 photo). Ex. A. In another photo, the victim is lying on her back, with her breasts exposed and her legs spread – the focal point is her vagina (April 24, 2011 photo). Ex. A.

Yet the defendant, who himself was born in Afghanistan – through repeated visits – took photos and close-up shots of Minor A's vagina and anus. PSR ¶ 17; (visits were on December 27, 2010; February 5, 2011; March 2, 2011; March 19, 2011; April 24, 2011; May 28, 2011; May 19, 2012). He overcame her resistance by telling her – as a family relative four times her senior – that he had taken the same kinds of images of other girls. PSR ¶ 18. While taking these photos, he touched her breast on at least one occasion. Ex. B. The defendant here transported child pornography – but it was child pornography he himself produced and procured, in the same room as the minor victim.

---

[2] *See, e.g.*, http://www.almasjid.com/content/islamic_dress_code

## The Guidelines Calculation and the Defendant's Objections

The United States has reviewed the Presentence Investigation Report ("PSR") and agrees that there is a factual basis for the Probation Officer's calculations and conclusions that the Total Offense Level is 37, that the Criminal History Category is I, and that the resulting advisory Sentencing Guidelines Range is 210 to 240 months.

The defendant has objected to the two-level guideline enhancement under U.S.S.G. § 2G2.1(b)(2)(A) based on sexual contact. This objection is meritless. There are two instances of sexual contact that the defendant is responsible for. First, Minor A says the defendant touched her breast. Ex. B. This meets the definition of sexual contact under 18 U.S.C. § 2246(3), which specifically states "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the…breast." Secondly, several of the photos show Minor A touching her own vagina. Ex. A. According to the Court in *United States v. Shafer*, 573 F.3d 267, (6th Cir. 2009), "Section 2246(3) clearly states that "sexual contact" involves certain intentional touching of "any person." "Any person" includes a person touching himself or herself." Id. at 272-73. This interpretation has been upheld by the other Circuit Courts that have been presented with the issue. *See United States v. Pawlowski*, 682 F.3d 205, 212-13 (3rd Cir. 2012); *United States v. Shea*, 493 Fed.Appx 792, 796 (7th Cir. 2012). The photographs attached as exhibits to this

motion clearly show the victim touching her own vagina in order to display it for the camera, constituting "sexual contact."

Next, the defendant takes issue with the two-level guideline enhancement under U.S.S.G. § 2G2.1(b)(5) because the defendant was a relative of Minor A. There is no basis for declining this application. The point of this guideline provision is to account for the abuse of trust or duty in connection with the responsibility or authority over the child victim. The defendant here was able to visit the home of Minor A in Philadelphia, PA. Why? Because he was a relative who had a personal connection to the family. Her family left him – a grown man four times older than Minor A – alone with her. Why? Because he was a relative who could be trusted. He was able to convince her to strip for him, and to expose her breasts and genitalia for his camera. Why? Because he was a relative with credible and proxy authority. He was able to scheme subsequent visits to Philadelphia for more abuse. Why? Because he was a relative who would be welcomed back and secure in the knowledge that Minor A would not report him and not, for example, a cable installer coming for a one-time visit under the watchful eyes of the family. *See United States v. Almazan*, 908 F.Supp.2d 963, 968 (N.D.Iowa 2012) (finding that the defendant being the minor victim's uncle was sufficient for the two-point enhancement).

Finally, the defendant claims that his mental health problems related to his service abroad is to blame for his child abuse and he is entitled to a downward departure. U.S.S.G. § 5H1.3. As an initial matter, this claim insults others who

Page 6 of 15

have honorably served their country and who now suffer from PTSD as a result. While his PTSD has caused memory loss, anxiety and depression, there is no evidence to suggest, and no studies to the government's knowledge that PTSD somehow contributes to a person's proclivity to sexually exploit a young female relative four times his junior. Instead, the defendant has contributed to the likelihood that the victim herself will suffer from PTSD during *her* life. S. V. McLeer et al., *PTSD in Sexually Abused Children*, 140, in B. Finkleman, Child Abuse: Short and Long-Term Effects (1995) (finding 75% of children sexually abused by a father suffered from PTSD, and no relationship existed between the time lap between the onset of the condition, and the sexual abuse). PTSD is not an excuse; it is not a mitigating factor. The government further notes that, far from being remorseful, the defendant has refused to discuss the sexual abuse in this case in the context of his mental health issues, both in his sex offender treatment program and with his PTSD treatment provider. PSR ¶ 51, Letter from Dr. Alvarado. The defendant's condition does not warrant a departure under these conditions. U.S.S.G. § 5H1.3 (departure not warranted unless mental conditions "are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."); PSR ¶ 80 (probation officer has in information about the offender which would warrant a departure).

## Sentencing Argument and the 3553(a) Factors

The Supreme Court of the United States held in *United States v. Booker* that although the United States Sentencing Guidelines are advisory, courts "must consult these Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). Procedurally, in imposing a sentence, the Court should start with the Sentencing Guidelines. *United States v. Gall*, 552 U.S. 38, 49 (2007); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (concluding that "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines").

After calculating the Guidelines range, the Court should then consider the arguments of the parties, in light of the factors set forth in Title 18, United States Code, Section 3553(a),[3] pursuant to which the Guidelines "serve as one factor among several courts must consider." *Kimbrough v. United States*, 552 U.S. 85, 90

---

[3] Title 18, United States Code, Section 3553(a) provides: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for -- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

(2007); *see also Gall*, 552 U.S. at 49-50 (concluding that the court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party").

A. **Seriousness of the Offense, Promotion of Respect for the Law, and Provision of Just Punishment**

The child pornography at issue here and the pornography he transported was not pornography he downloaded from a peer-to-peer computer program. It was not child pornography he was able to obtain by flattering an exhibitionist teenager into texting to his phone. This was child pornography he produced, face to face, alone in a room of with 11-year old young relative. He was alone with her only because her mother and brother trusted him. He saw her naked only because he used his authority to overcome her upbringing. He touched her breasts. PSR ¶ 18. And took photos over the course of repeated visits, month after month. Ex. A; PSR ¶ 21 (defendant admitting that one purpose of the travel was to take pornographic images of Minor A.").

Producing child pornography is a serious offense that causes grave harm to the children depicted in the images. *New York v. Ferber*, 458 U.S. 747, 758 (1982). In *Ferber*, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758 (citations omitted). The *Ferber* court also observed that the "[pornographic] materials produced are a permanent record

of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759 (citation omitted). Furthermore, the Supreme Court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at 759 & n. 10 (citations omitted). *See also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) (reaffirming *Ferber* in case involving possession of child pornography); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002) ("as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being.")

The defendant's crime is very serious.[4] It is not an "invasion of privacy." It is a crime of violence. 18 U.S.C. § 3156(a)(4)(C). Indeed,

> Because the punishment should fit the crime, the more serious the criminal conduct is the greater the need for retribution and the longer the sentence should be. The seriousness of a crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be for

---

[4] Teenage victims have committed suicide following the production (and publication) of pornographic images. *See, e.g.*, Teenager commits suicide after 'sexting' a nude photo to her boyfriend made her life a misery, *available at* http://www.dailymail.co.uk/tvshowbiz/article-1161112/Teenager-commits-suicide-sexting-nude-photo-boyfriend-life-misery.html#ixzz2hoLsPTcL; Bullied Teen Amanda Todd's Death Under Investigation, *available at* http://abcnews.go.com/US/bullied-teen-amanda-todds-death-investigation/story?id=17489034.

> the punishment to fit the crime. As we have stated before, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses."

*United States v. Irey*, 612 F.3d 1160, 1210 (11th Cir. 2010) (where in a rehearing en banc in a child exploitation case, the Eleventh Circuit held that a downward variance from the advisory Guidelines range was not reasonable, finding that the district court unreasonably failed to give enough weight to "the nature and circumstances of the offense," and to the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") (citations omitted).

### B. History and Characteristics of the Defendant

At the same time, the defendant has not offered any reason for excessive leniency. He is married. PSR ¶ 41. He has children. PSR ¶ 46 (ages range from 15 to 28). His basic childhood necessities were met. PSR ¶ 43. He is healthy. PSR ¶ 49. He is educated. PSR ¶ 54. He continues to enjoy the continued support of his family. PSR ¶ 51. Unlike the child he exploited, he suffered no physical or sexual abuse growing up. PSR ¶ 43. He refused to discuss his conduct during the Court-ordered sex offender treatment. PSR ¶ 51. Nor has he discussed it with his PTSD treatment provider. Letter from Dr. Alvarado. Despite this upbringing, he chose to abuse a child four times his minor. *See* H. Rep. 98-1017, 98th Cong. 2d Sess., Judiciary Committee Report on Sentencing Revision Act of 1984, at 39 ("a criminal sentence

must not cause disrespect for the law. This purpose is avoided when excessively lenient sentences are avoided.").

### C. The Need to Afford Adequate Deterrence

The Court must also consider the need for the sentence imposed to afford adequate deterrence. 18 U.S.C. § 3553(a)(2). Here, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. Federal District Judge John R. Adams, in *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), used a quote attributed to Nelson Mandela: "There can be no keener revelation of a society's soul than the way in which it treats its children." *Id.* at 847. He continued, "Given the recent statistics surrounding child pornography, we are living in a country that is losing its soul." *Id.*

The general deterrent effect of a prison sentence is an appropriate consideration in choosing a reasonable sentence. This is not a case about passive downloading, but active production of child pornography. *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("[C]hildren depicted in the pornography suffer a direct and primary emotional harm when another person possesses, receives or distributes the material."). Even a "'passive' consumer who merely receives or possesses the images directly contributes to this continuing victimization." *Sherman*, 268 F.3d at 545 (citations omitted). "Indeed, one of the reasons for

criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." *Sherman*, 268 F.3d at 547. But here, the child pornography was actively procured.

A guideline sentence is also necessary for reasons of specific deterrence. The defendant has not expressed any remorse for his actions, or the effect they had and will continue to have on his victim. As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. <u>Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children</u>. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).
> *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) (emphasis supplied).

This case is a particularly good candidate for deterrence and a lifetime of supervised release because of the premeditated nature of the defendant's crimes, the repeated conduct at stake here, and the face-to-face personal contact in

obtaining the child pornography, in addition to the defendant's lack of remorse for his actions. Courts have recognized that deterrence alone can justify a lengthy sentence. *See, e.g., United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008); *United States v. Sagendorf*, 445 F.3d 515, 518 (1st Cir. 2006). That is the case here. *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

A guideline sentence is also necessary to avoid unwarranted sentencing disparities. Recent cases in the Fourth Circuit have affirmed significant sentences for possession of child pornography alone. *United States v. Nicolai*, 2014 WL 1015996 (4th Cir. Mar. 18, 2014) (affirming 110-month sentence for possession of child pornography); *United States v. Cox*, 2014 WL 842105 (4th Cir. Mar. 5, 2014) (affirming 240-month sentence for possession of child pornography where defendant caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct); *United States v. Layne*, 2013 WL 6671668 (4th Cir. Dec. 19, 2013) (affirming 120-month sentence and 20-year supervised release term for defendant convicted of possession of child pornography); *United States v.*

*Johnson*, 523 Fed. Appx. 219, 223 (4th Cir. 2013) (96-month sentence for receipt and possession of child pornography affirmed despite defendant's posing no social harm and community service); *United States v. Silcox*, 474 Fed. Appx. 1000 (4th Cir. 2012) (120-month within-guidelines sentence for possession of child pornography affirmed); *United States v. Wolfe*, 468 Fed. Appx. 235 (4th Cir. 2012) (87-month sentence for possession of child pornography affirmed); *United States v. Hunsberger*, 466 Fed. Appx. 253 (4th Cir. 2012) (97-month sentence for possession of child pornography affirmed).

## Conclusion

The United States submits that a sentence within the Guidelines range of 210 to 240 months, along with a lifetime term of supervised release is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). "[D]istrict courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that child pornography crimes are serious offenses deserving serious sanctions." *United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010).

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By:_____/s/_____
Alexander T.H. Nguyen
Assistant United States Attorney
Alicia J. Yass
Special Assistant United States Attorney (LT)

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF) to:

John Kenneth Zwerling
Cary Citronberg
Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314
jz@zwerling.com
cary@zwerling.com

A copy of this pleading has also been sent to:

Quentin T. Lowe
United States Probation Officer
Quentin_Lowe@vaep.uscourts.gov

Respectfully submitted,

Dana J. Boente
Acting United States Attorney


By: _____/s/_____
Alicia J. Yass
Special Assistant United States Attorney
Eastern District of Virginia
*Counsel for the United States*
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: alicia.j.yass@usdoj.gov

Date: April 11, 2014